1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11    RICHARD TREVINO TAMEZ,              No. 1:16-cv-01314-LJO-SKO

12              Petitioner,               **FINDINGS AND RECOMMENDATIONS
                                          TO DENY PETITION FOR WRIT OF**
13        v.                              **HABEAS CORPUS AND DECLINE TO
                                          ISSUE CERTIFICATE OF**
14    RAYMOND MADDEN, Warden,             **APPEALABILITY**

15              Respondent.               **(Doc. 1)**

16

17        Petitioner, Richard Trevino Tamez, is a state prisoner proceeding with counsel with a

18   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges four grounds[1]

19

20

21   [1] Petitioner alleged seven grounds in his petition:

22        (1) counts 8 and 9 (showing harmful material to a minor) should be reversed due to insufficient
          evidence and denial of procedural due process;
23        (2) trial counsel should have objected to inadmissible credibility opinion and false accusation
          motives speculation, and such failure constitutes a Sixth Amendment ineffective assistance claim;
24        (3) trial counsel provided prejudicial ineffective assistance by failing to object to unreliable,
          unscientific CSAAS testimony;
25        (4) trial counsel rendered prejudicial ineffective assistance by not objecting to CSAAS testimony
          as improperly intruding upon the jury's fact finding function;
26        (5) using jury instruction CALCRIM No. 361 was prejudicial error and violated due process;
          (6) using jury instruction CALCRIM No. 330 was prejudicial error and violated due process; and
27        (7) the imposed indeterminate terms of 75-years-to-life are unauthorized.  (Doc. 1 at 2-3).

28   For purposes of clarity, the Court grouped the allegations into four broader categories.  The Court will discuss each
     separate claim within the four categories.

1

for habeas relief: (1) insufficient evidence; (2) ineffective assistance of counsel; (3) jury instruction errors; and (4) incorrect imposition of a sentence. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the habeas petition.

## I.      **Factual and Procedural Background[2]**

At the age of five or six, Steven[3] temporarily lived with his grandmother Denise and Petitioner, Denise's boyfriend. Steven and Petitioner were left alone whenever Denise went to work. More than once, in either the living room or the bedroom, Petitioner showed Steven a "porno"[4] video of "[a] male putting his penis inside the vagina of [a] girl." Devan, Steven's younger brother who sometimes visited the residence, was also shown the video.

More than once, Petitioner groped Steven's penis and sodomized Steven and then masturbated. Steven also saw Petitioner fondling Devan's penis "a couple of times."

When Steven tried to tell Denise about the molestation, she remarked that "it was never a good time for her." He did not report the incidents to anyone else.

When Devan was five years old,[5] he would often visit Denise and Petitioner's home. On one occasion, in the living room, Petitioner put "pornography on the television" showing "a guy and a girl" that were "in a hospital in a hospital bed . . . having sex." Petitioner sodomized and touched Devan's penis at least twice, and lubricated Devan's penis at least once.

Devan told Denise about the molestation, but "[s]he didn't believe [him]." He did not report the incidents to anyone else.

---

[2] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Tamez* (Cal. Ct. App. July 28, 2015) (No. F068488), is presumed to be correct. 28 U.S.C. § 2254(e)(1).
[3] Steven was born in February 1996 and at the time of trial was 17 years old.
[4] Steven was asked to define "porno," which he described as "[p]ornography, man and woman having sex."
[5] Devan was born in December 1997, and at the time of the trial was 15 years old.

In a December 11, 2008 interview at the Child Abuse Response Team ("CART") office, Devan – then 10 years old – described numerous incidents that occurred at Denise and Petitioner's home when Denise was away.[6] Petitioner groped Devan's penis over 10 times, copulated his mouth with Devan's penis at least 5 times, and forced Devan to lubricate his own penis with a "liquid gel" from a "pack about the size of [a] ketchup packet . . . [a]bout every single time." Petitioner lubricated his own penis and forcibly sodomized Devan "about every single time." In one instance, Petitioner "change[d] the t.v." while Devan and Steven were watching cartoons and "put bad stuff" on the television, which showed "pregnant girls in the hospital and a guy coming in and . . . having [sex] with them."[7]

Steven witnessed Petitioner molesting Devan, but Devan did not see Petitioner molesting Steven. Devan and Steven "tried to tell [Denise] twice" about the abuse, but she "didn't listen" and "said . . . [Petitioner] would never do a thing like that." The boys did not report the incidents to anyone else "[b]ecause [they] were afraid they wouldn't [be] believe[d]." Additionally, Petitioner threatened to "hunt [them] down and . . . hurt [them]."

---

[6] The jury watched a video recording of this interview, which was admitted pursuant to California Evidence Code § 1360. California Evidence Code § 1360 states:

> (a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:
>   (1) The statement is not otherwise admissible by statute or court rule.
>   (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.
>   (3) The child either:
>     (A) Testifies at the proceedings.
>     (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

[7] During the interview, Devan was asked to define "sex." He replied that he "d[id]n't know" and heard the word "on t.v."

In December 2009, Petitioner was charged with eleven counts: (1) count 1 – committing a forcible lewd or lascivious act upon Steven, a child under the age of 14 (Cal. Penal Code § 288(b)(1)); (2) counts 2 and 3 – committing lewd or lascivious acts upon Steven (Cal. Penal Code § 288); (3) count 4 – committing a forcible lewd or lascivious act upon Devan, a child under the age of 14 (Cal. Penal Code § 288(b)(1)); (4) counts 5, 6, and 7 – committing lewd and lascivious acts upon Devan (Cal. Penal Code § 288); (5) counts 8 and 9 – sending harmful matter to a minor (former Cal. Penal Code § 288.2(a)); and (6) counts 10 and 11 – committing lewd or lascivious acts upon J.R.,[8] a child under the age of 14 (Cal. Penal Code § 288(a)).

With respect to counts 1 through 7, as well as 10 and 11, the information alleged that Petitioner committed the charged crimes against more than one victim; had substantial sexual conduct with the victims; was previously convicted of two felony sex offenses, i.e., oral copulation and sodomy; was a habitual sexual offender; committed the charged crimes and was previously convicted of oral copulation and sodomy; was previously convicted of two serious and/or violent felonies, i.e., oral copulation and sodomy; and was previously convicted of a serious felony, i.e., sodomy.

With respect to counts 8 and 9, the information alleged that Petitioner was previously convicted of two felony sex offenses, i.e., oral copulation and sodomy; and was previously convicted of two serious and/or violent felonies, i.e., oral copulation and sodomy.

On December 16, 2010, a jury acquitted Petitioner on counts 10 and 11, but could not reach a verdict on counts 1 through 9. The trial court declared a mistrial as to the deadlocked counts.

On September 26, 2013, Petitioner's retrial began. Denise testified at trial that at the time of the incidents, she and Petitioner were in a relationship and lived together in her home. Steven and Devan visited them and Steven lived with them "for a while." Denise worked at a truck scale

---

[8] The record does not contain any further information about J.R.

4

and would, occasionally, bring Steven and Devan to the "scale house" with her. On these occasions, Petitioner picked up the boys and drove them to their home. Denise acknowledged that there were "probably" pornographic movies in the home.

On cross-examination, Denise denied that Steven and Devan told her about the molestation.

Detective Rodney Klassen ("Detective Klassen") was assigned to the investigation in 2008. He arranged for CART to interview Steven and Devan, but declined to have the boys undergo forensic evaluations for sexual abuse, because the incidences of abuse occurred years before Detective Klassen became involved in the case.

Detective Klassen interviewed Petitioner and handed Petitioner a piece of paper with the following written on it:

> We are investigating unlawful touching involving Steven [and] Dev[a]n. Please write, in detail, everything you know about that."

In response, Petitioner wrote:

> I do not remember much prior to Aug[ust] 23, [20]08 due to an accident on my dirt bike where I lost my memory. But I do remember never ever touching those boys in any way that was [i]nappropriate. They were grandsons of a girlfriend I had for three years and was around them from time to time when they stayed with us. I have children of my own and would not act in this type of behavior.

Petitioner told Detective Klassen that he occasionally looked after Steven and Devan by himself whenever they visited on the weekends. Petitioner later added that the boys "were in his life . . . an awful lot." Petitioner admitted that he possessed and watched "pornographic videos back during that time." When Detective Klassen asked Petitioner why Steven and Devan would accuse him of molestation, Petitioner answered that "they were angry with him for no longer being in a relationship with their grandmother."

In December 2008, Detective Klassen searched Petitioner's residence and found a packet of "Enzyte Topical Rush," a sexual lubricant.

One of Petitioner's other victims, Michael,[9] testified at retrial that he was four or five years old when he was molested by Petitioner at his aunt's house. Petitioner – then married to Michael's aunt – showed Michael an "Arabic[-]theme[d]" pornographic video of "a female performing oral sex on a guy." He fondled Michael's penis and buttocks and "put . . . some lube on" during an attempted sodomy.

At trial, Dr. Anthony Urquiza ("Dr. Urquiza"), a licensed child psychologist, professor, and director of the child abuse treatment program within the Department of Pediatrics at the University of California, Davis Medical Center, presented an overview of Child Sexual Abuse Accommodation Syndrome ("CSAAS"). CSAAS is "an educational tool [used] to train therapists about sexual abuse." Dr. Urquiza identified five characteristics of CSAAS: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed disclosure; and (5) retraction.

Petitioner testified that he did not molest Steven and Devan and did not babysit or transport them by himself. Petitioner was never left alone with the boys because their family was aware of past child molestation accusations made against him.

On cross-examination, Petitioner stated that he had sustained temporary short term memory loss as a result of a motorcycle accident before he was interviewed by Officer Klassen. He denied telling Officer Klassen that he babysat Steven and Devan, but did recall telling Officer Klassen that he gave them rides to their house. Petitioner also recalled telling Officer Klassen that he showered with the boys in Denise's presence. Petitioner denied owning pornographic videos, but admitted to viewing pornography on television.

At trial, the Court gave two jury instructions relevant to the case at bar. First, the Court instructed the jury as to CALCRIM No. 330, which stated:

> You have heard testimony (via Evidence Code 1360: The "CART" Interview of Devan [ ]) from a child who is age 10 or younger. As with any other witness, you

---

[9] Michael was born in September 1989 and at the time of retrial was 23 years old.

must decide whether the child gave truthful and accurate testimony.

In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development.

When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate.

While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child.

(Lodged Doc. Reporter's Transcript 3 at 636.)

Second, the Court gave CALCRIM No. 361, which, as read to the jury stated:

If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove each element of the crime beyond a reasonable doubt.

If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

*Id*. at 664.

On September 26, 2013, following the retrial, the jury convicted Petitioner on counts 1 through 9 and found true the allegations that he: (1) committed lewd or lascivious acts against more than one victim; and (2) had substantial sexual conduct with the victims. [10] In a bifurcated proceeding, the Court found true "the special allegations set forth and the priors set forth in the information."

Petitioner received an aggregate sentenced of 525 years to life plus a consecutive 112 years four months. On each of counts 1 through 7, the court imposed: (1) 75 years to life (Cal. Penal Code § 1170.12(c)(2)(A)(i)); (2) a 5 year enhancement for a prior serious felony conviction, i.e.,

---

[10] Prior to defense's case-in-chief at retrial, the Court granted defense counsel's motion for judgment of acquittal on count 1 due to insufficient evidence (Cal. Penal Code § 1118.1). The Court also substituted the lesser included offense – i.e., committing a lewd or lascivious act upon Steven (Cal. Penal Code § 288(a)) for the jury's – consideration.

sodomy (Cal. Penal Code §667(a)(1)); (3) a 5 year enhancement for the prior oral copulation conviction (Cal. Penal Code § 667.51); and (4) a 5 year enhancement for the prior sodomy conviction. It imposed 6 years on count 8 and 16 months on count 9.

On July 28, 2015, the California Court of Appeal for the Fifth Appellate District affirmed Petitioner's conviction. On November 10, 2015, the California Supreme Court summarily denied Petitioner's petition for review.

On September 6, 2016, Petitioner filed his petition for writ of habeas corpus before this Court. Respondent filed a response on December 7, 2016, and Petitioner filed a reply on December 22, 2016.

## II.     Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to

satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**III.** **The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claims**

In his first ground for habeas relief, Petitioner alleges his conviction on counts 8 and 9, showing harmful material to a minor, should be reversed due to insufficient evidence and denial of Petitioner's procedural due process rights. (Doc. 1 at 28-37.) Respondent counters that the Court of Appeal's rejection of Petitioner's claims was reasonable because there was evidence to support the jury's finding that Petitioner was guilty of showing harmful material to a minor. (Doc. 14 at 15.)

**A. Standard of Review for Insufficient Evidence Claims**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

**B. State Court of Appeal Opinion**

The Court of Appeal determined that substantial evidence established that Petitioner showed harmful matter to Steven and Devan. *People v. Tamez* (Cal. Ct. App. July 28, 2015) (No. F068488), at 11.

Petitioner was charged with sending harmful matter to a minor (former Cal. Penal Code §

288.2(a)). The California Court of Appeal explained that pursuant to § 288.2(a),

> [e]very person who, with knowledge that a person is a minor, . . . knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means . . . any harmful matter . . . to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor, is guilty of a public offense . . . ." (Former [Cal. Penal Code] § 288.2, subd. (a); accord *People v. Powell* (2011) 194 Cal.App.4th 1268, 1287 (*Powell*); *People v. Dyke* (2009) 172 Cal.App.4th 1377, 1382 (*Dyke*).) "'Harmful matter' means matter,[FN14] taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." ([Cal. Penal Code] § 313, subd. (a); accord, *Powell*, *supra*, at p. 1288; *Dyke*, *supra*, at p. 1382.)[FN15].

> FN14 "'Matter' means any book, magazine, newspaper, video recording, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription, or mechanical, chemical, or electrical reproduction or any other articles, equipment, machines, or materials." ([Cal. Penal Code] § 313, subd. (b).)

> FN15 Section 313, subdivision (a), "essentially 'tracks' the three-prong test for obscenity articulated by the United States Supreme Court in *Miller v. California* (1973) 413 U.S. 15, 24" (*Dyke*, *supra*, 172 Cal.App.4th at pp. 1382-1383) with some exceptions. First, "the relevant community standard by which the material is evaluated is 'statewide'" under the state statute. (*Id*. at p. 1383). Second, the statute provides that "the work must lack serious literary, artistic, political, or scientific value *for minors*." (*Ibid*.) Third, "'"the *Miller* obscenity test does not incorporate the 'taken as a whole' standard into the second part of the test"'" (*Powell*, *supra*, 194 Cal.App.4th at p. 1289), "i.e., the 'patently offensive' specification" (*ibid*.).

Here, the Court of Appeal determined:

[Petitioner] does not appear to dispute that Steven and Devan viewed *something* at the trailer home. Instead, he contends the evidence did not establish that (1) the boys observed patently offensive material; and (2) the material lacked serious literary, artistic, political, or scientific value for minors. [Petitioner] cites *Dyke* as supporting authority. In that case, A.S. – a 6-year-old female – testified that she and Dyke – her friend's father – were watching television when he switched the channel to "pornographic" programming. (*Dyke*, *supra*, 172 Cal.App.4th at p. 1380.) In particular, she recalled two scenes: (1) "a naked woman dancing"; and (2) "a naked woman and a naked man 'having sex.'" (*Ibid*.) The latter scene

"showed only their upper bodies, from a side angle, and the woman was on top."
(*Id*. at pp. 1380-1381.)  Based solely on A.S.'s testimony, Dyke was convicted of
sending harmful matter to a minor.  (*Id*. at pp. 1380, 1384.)  On appeal, Division
Four of the First Appellate District reversed the conviction on the basis of
insufficient evidence.  (*Ibid*.)  It explained:

> "[T]he question of what is '"patently offensive"' under the community
> standard obscenity test is essentially a question of fact.  [ ]  Thus, we
> consider whether a rational trier of fact could have found the television clips
> viewed by A.S. to be patently offensive under contemporary statewide
> standards.  Under this test, 'the primary concern' is that the communication
> be 'judged by its impact on an average person, rather than a particularly
> susceptible or sensitive person – or indeed a totally insensitive one.'  [ ]  [¶]
> . . . [¶]
>
> "We conclude there is insufficient evidence in the record to hold that the
> television images as described by A.S., met the test for harmful matter.
> First, applying a contemporary adult standard, nudity alone is not per se
> obscene [ ], and the [United States Supreme C]ourt has stated that 'all nudity
> cannot be deemed obscene even as to minors [ ].  Indeed, the definition of
> sexual conduct in a statute found in a companion chapter of the Penal Code
> includes a variety of sexual acts, but not simple nudity or nude dancing.  [ ]
> Likewise, portrayals of sexual activity are not ipso facto obscene [ ], even
> if they may be characterized as 'dismally unpleasant, uncouth, and tawdry'
> [ ].  As the [United States Supreme C]ourt stated . . ., 'sex and obscenity are
> not synonymous.'  Accordingly, in order to determine whether a portrayal
> of sex is patently offensive to the average adult, '[a] reviewing court must,
> of necessity, look at the context of the material, as well as its content.'  [ ]
>
> "What is missing from this record is any context by which the reasonable
> trier of fact can make this determination.  There is only a bare-bones recital
> by A.S. of what she saw: a nude woman dancing and a naked couple having
> sex, shown from the waist up, and her own characterization of it as
> 'pornography.'  Without more, neither we nor the jury are permitted to
> presume that such content is patently offensive to the average adult,
> applying statewide community standards.
>
> "Even if a reasonable jury could conclude that the television clips observed
> by A.S. 'depict[ or describe[ ], in a patently offensive way, sexual conduct'
> [ ], not all depictions of such conduct constitute harmful matter.  Section
> 313, subdivision (a) also requires that the matter, 'taken as a whole, lacks
> serious literary, artistic, political, or scientific value for minors.' . . . . [¶] . .
> . [¶]
>
> "It is impossible on this record to conclude that the television segments A.S.
> observed did not contain 'serious literary, artistic, political or scientific
> value for minors.'  [ ]  Was the dance by the unclothed female lurid, artistic,
> or even a cultural or tribal dance?  There is no way to know and no

12

reasonable basis for inferring that it lacked such value. As to the . . . glimpse of the couple presumably having sexual intercourse, was the clip part of a tawdry adult film, a former Academy Award winner being shown on television that night, or even a brief scene from Shakespeare's Romeo and Juliet? Once again the record provides no basis for drawing a reasonable inference that either clip lacked 'serious literary, artistic, political, or scientific value for minors.' Without that evidence, a reasonable jury would not be able to judge the clips viewed by A.S. to be harmful matter,' as defined in section 313." (*Dyke*, *supra*, 172 Cal.App.4th at pp. 1384-1387, fns. Omitted.)

*Tamez*, (No. F068488), at 12-15.

Here, the Court of Appeal disagreed with Petitioner's contention that this case is similar to *Dyke*. The Court of Appeal reasoned,

[t]he record – viewed in the light most favorable to the judgment – indicates that Steven and Devan were shown the same footage. In contrast to A.S.'s "bare-bones recital" in *Dyke*, *supra*, 172 Cal.App.4th at page 1385, Steven's testimony did not solely describe simple nudity or an artfully-edited sex scene. Rather, Steven unambiguously testified that he saw "[a] male putting his penis inside the vagina of [a] girl." (See *Powell*, *supra*, 194 Cal.App.4th at p. 1295 [victim's account of watching a movie in which actors displayed uncensored genitalia and participated in simulated or unsimulated sexual activity sufficiently established patently offensive sexual conduct].) In addition, Devan related that the footage luridly portrayed pregnant females engaging in sexual intercourse with a male in a hospital setting. Given these details, a reasonable trier of fact could have determined that Steven and Devan were exposed to matter that depicted patently offensive sexual conduct and lacked serious literary, artistic, political, or scientific value for minors.

*Id*. at 15.

## C. Denial of Petitioner's Insufficient Evidence Claim Was Not Objectively Unreasonable

Petitioner maintains that the evidence presented at trial was insufficient to prove that he showed harmful material to Steven and Devan. (Doc. 1 at 16-25.) Petitioner states that the record is devoid of evidence that Petitioner showed Devan and Steven "harmful material, or material that "lacked 'serious literary, artistic, political, or scientific value for minors.'" *Id*. at 23-24.

Petitioner presents the same argument before this Court as before the Court of Appeal and primarily relies on *Dyke*, 172 Cal. App. 4th 1377. Petitioner is asking this Court to reweigh the evidence in his favor. However, on habeas review, this Court does not reweigh the evidence presented at trial. Instead, the Court must review the record to determine whether a rational trier of fact could have found Petitioner showed harmful material to minors.

Harmful matter is defined in Section 313 as

> matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

California Penal Code § 313(a).

In California, there are two leading cases on the issue of harmful material, *Dyke* and *Powell*. In *Dyke*, the Court of Appeal reversed a conviction for exhibiting harmful material to a 16 year old victim, because the convictions was based upon "only a bare-bones recital by [the victim] of what she saw: a nude woman dancing and a naked couple having sex, shown from the waist up, and her own characterization of it as 'pornography.'" 172 Cal. App. 4th at 1385. The Court of Appeal reversed the conviction because there was insufficient evidence due to a lack of information regarding the context in which nudity and sex had been portrayed in the material. *Id*. at 1385-87. Further, although the victim described the material as "pornography[,]" there had been "no testimony as to what she meant by that term, or how broadly it may have been intended." *Id*. at 1384, n. 5.

By contrast, in *Powell*, the 10 year old victim characterized movies shown to her as "pornographic" and described the content of the movies as containing "[p]enises, breasts, and vaginas featured in lewd displays as the actors 'did it,' i.e. engaged in sexual activity." 194 Cal. App. 4th at 1286, 1295. The Court noted that "nudity or depictions of sexual intercourse or other

sexual activity do not, by themselves, make a movie obscene." *Id*. at 1291.  Based on the United States Supreme Court's decision in *Miller*, the *Powell* Court noted, "*Miller* makes plain that hard-core pornography is synonymous with obscene pornography.  Pursuant on *Miller*, the law distinguishes between hard-core pornography and soft-core pornography, which involves depictions of nudity and limited and simulated sexual conduct." *Id*. at 1293 (internal citations and quotation marks omitted).  The Court described hard-core pornography as depicting "full male nudity and actual sex[;]" whereas "soft-core sex is more simulated than real, and the films usually attempt to have coherent storylines and dialogue." *Id*. at 1294 (internal citations and quotation marks omitted).

Contrasting the evidence in the *Powell* case with the testimony found to be insufficient in *Dyke*, the Court of Appeal in *Powell* determined that the evidence met "the minimum required for a rational trier of fact to conclude that defendant forced the victim to watch obscene depictions within the meaning of section 313, subdivision (a)." *Id*. at 1295.  The victim was shown hard-core porn, as it showed "[p]enises, breasts, and vaginas [ ] featured in lewd displays as the actors 'did it,' i.e. engaged in sexual activity and not just kissing." *Id. at 1295.*

The evidence in this case was not overwhelming; however, it permits a reasonable inference that the movies shown to Steven and Devan met the statutory definition of "harmful matter."  Steven testified that Petitioner showed him a "porno," which he explained showed a "man and [a] woman having sex."  (Lodged Doc. Reporter's Transcript at 37-38.)  Steven further stated the movie showed "[a] male putting his penis inside the vagina of [a] girl." *Id*. at 38.  Devan also remembered Petitioner showing him "pornography on television." *Id*. at 119.  Devan described this as "[l]ike porn, like people having sex," and it showed "a guy and a girl, and they were in a hospital in a hospital bed." *Id*. at 120.  During his CART interview, Devan also described how he and Steven would watch cartoons and Petitioner would change the station to "bad stuff" of "pregnant girls in

the hospital and a guy coming in and . . . having [sex] with them." *Tamez*, (No. F068488), at 5.

Evidence is considered in the light most favorable to the prosecution, and it is assumed that the jury weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. Based on Steven and Devan's testimony and reasonable inferences drawn from their testimony, sufficient evidence supports the jury's findings that Petitioner showed the boys "harmful matter," because Petitioner showed the boys hard-core pornography.

The Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. For these reasons, the Court recommends denying Petitioner's claim that there was insufficient evidence to support a finding that Petitioner showed harmful material to minors.

## IV. The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claims

In Petitioner's second ground for relief, Petitioner contends his trial counsel provided ineffective assistance of counsel. (Doc. 1 at 25-63.) Specifically, Petitioner contends trial counsel failed to object to (1) an inadmissible credibility opinion and speculation as to motives; (2) unreliable, unscientific CSAAS testimony; and (3) testimony that improperly intruded upon the jury's fact-finding function. *Id.* Respondent counters that because the evidence was admissible at trial, trial counsel was not ineffective for failing to object to the evidence. (Doc. 14 at 18.)

### A. Standard of Review for Ineffective Assistance of Counsel Claims

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's

16

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) he suffered prejudice as a result of the deficient representation. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

## B. State Court of Appeal Opinion

The Court of Appeal rejected Petitioner's claim of ineffective assistance of counsel, "because the appellate record does not show the reason for defense counsel's failure to object to certain evidence." *Tamez*, (No. F068488), at 15.

The Court of Appeal explained:

[o]n appeal, [Petitioner] questions the admissibility of (1) [Officer] Klassen's statement at retrial that [Petitioner] – in response to [Officer] Klassen's question regarding the veracity of Steven and Devan's molestation accusations – declared that the boys "were angry with him for no longer being in a relationship with their grandmother"; and (2) [Dr.] Urquiza's CSAAS testimony. However, he concedes that defense counsel did not object to either. . . .

[Petitioner] alleges that defense counsel rendered ineffective assistance by failing to object. (See *Harrington v. Richter* (2011) 562 U.S. 86, 105 ["An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial. . . ."].) . . .

17

The record before us "'does not illuminate the basis for attorney's challenged acts or omissions. . . .'" (*People v. Silvey* (1997) 58 Cal.App.4th 1320, 1329.) Defense counsel was never asked to explain why he failed to object and we cannot find "no satisfactory explanation" (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212) for his refrainment as case law permits: (1) a defendant, who is "a percipient witness to the events at issue" and who has personal knowledge of the other witnesses to those events, to be asked to provide insight on whether those witnesses are intentionally lying, have a bias, or are merely mistaken (*People v. Chatman* (2006) 38 Cal.4th 344, 382; see *id*. at 383); and (2) CSAAS testimony "for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse" "in a judicial proceeding presenting the question [of] whether a child has been sexually molested" (*In re S.C.* (2006) 138 Cal.App.4th 396, 418). Moreover, "'"[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel' [ ].' [ ]." (*People v. Gurule* (2002) 28 Cal.4th 557, 609-610; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 ["''"[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"''"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1185 ["'Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight. . . . A reviewing court will not second-guess trial counsel's reasonable tactical decisions.'"].) Accordingly, we reject [Petitioner's] claim of ineffective assistance of counsel.

*Tamez*, (No. F068488), at 16-17.

### C. Rejecting the Ineffective Assistance of Counsel Claims Was Not Objectively Unreasonable

#### 1. Objections to Inadmissible Credibility Opinions

Petitioner alleges the prosecutor "presented improper evidence that Detective Klassen requested and obtained [Petitioner's] expression of an opinion that the accusers lied and [Petitioner's] speculation on a false accusation motive." (Doc. 1 at 25.) Petitioner contends that defense counsel should have objected to this testimony. *Id*.

In his petition, Petitioner admits that the United States Supreme Court has not resolved the question of whether it is constitutional to ask a criminal defendant for an opinion on the credibility of other witnesses. *Id*. at 27. However, Petitioner notes that the Ninth Circuit has held "[i]t is improper for a prosecutor to question a defendant regarding the veracity of a government witness." *United States v. Moreland*, 622 F.3d 1147, 1158 (9th Cir. 2010) (citing *United States v. Combs*, 379 F.3d 564, 572 (9th Cir. 2004); *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir.

18

1998)).

Under AEDPA, circuit law is only "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law," but only holdings of the United States Supreme Court must be reasonably applied by state courts. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Lockyer v. Andrade*, 538 U.S. 63, 71-2 (2003).

Because there is no clearly established United State Supreme Court authority, Petitioner is not entitled to relief. Petitioner cannot show that the state court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law. As such, the Court recommends denying the claim.

## 2. Objection to CSAAS Testimony

Petitioner claims his counsel should have objected to the CSAAS evidence, because the "[s]cientific literature establishes that CSAAS is unscientific and unreliable." (Doc. 1 at 35.) Specifically, Petitioner states trial counsel should have objected, because (1) CSAAS evidence is unreliable and unscientific; and (2) CSAAS testimony "improperly intrud[ed] upon the jury's fact-finding function." *Id*. at 35, 48.

However, Petitioner acknowledges that published cases in both California and the Ninth Circuit have rejected challenges to the validity and admissibility of CSAAS testimony. *Id*. at 40. The Ninth Circuit has held that CSAAS testimony is admissible in federal child sexual abuse trials, where the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth. *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003).

Here, the Court of Appeal found that the CSAAS testimony was permissible pursuant to California law. *Tamez*, (No. F068488), at 16-17. Because the questions were admissible under California evidence law, there was no basis for Petitioner's attorney to object at trial. Therefore,

the attorney's performance was not outside the range of professionally competent assistance. *See Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance of counsel.") (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). For these reasons, the state court's denial of Petitioner's ineffective assistance of counsel claims was reasonable, and the Court recommends denying the claim.

## V. Errors in Jury Instructions Do Not Present Cognizable Federal Claims

For his third ground for habeas relief, Petitioner contends two jury instructions violated his constitutional rights, because the instructions were inapplicable and prejudicial. (Doc. 1 at 75-93.) Respondent counters that Petitioner's claims of instructional error implicate state law, and are not a basis for federal habeas relief. (Doc. 14 at 22-24.)

### A. Federal Habeas Review of Jury Instruction Errors

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules")). A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (citing *Melugin v. Hames*, 38 F.3d 1478, 1482 (9th Cir. 1994)).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Instead, the petitioner must prove that the improper instruction "by itself so infected the entire

trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72 (internal citations omitted). Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction in isolation but must consider the context of the entire record and of the instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157. "Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Solis v. Garcia*, 219 F.3d 922, 927 (9th Cir. 2000) (quoting *Estelle*, 502 U.S. at 72) (internal quotation marks omitted).

If a trial court has made an error in an instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776) (internal quotation marks omitted). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Id.* A violation of due process occurs only when the instructional error results in the trial being fundamentally unfair. *Estelle*, 502 U.S. at 72-73; *Duckett v. Godinez*, 67 F.3d 734, 746 (9th Cir. 1995). If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

21

## B. <u>Jury Instruction Conference During the Trial</u>

The Court of Appeal found that the trial court did not err in giving the jury instructions.

*Tamez*, (No. F068488), at 17.

During the jury instruction conference, the trial court and attorneys discussed

CALCRIM Nos. 330 and 361:

> "[THE COURT]:      So I intend to give . . . [CALCRIM No.] 330, although actually, no child was 10 years or younger at the time they testified.
>
> "[PROSECUTOR]:   If you read [the proposed instruction], it says the CART interview just to be on the safe side to clarify they did hear testimony from the child.
>
> "THE COURT:        . . . [T]hat is brilliant work.  I like that, and I think you're absolutely right.  [¶]  All right.  Any thoughts on that . . .?
>
> "[DEFENSE COUNSEL]:     No, your Honor.  [¶] . . . [¶]
>
> "THE COURT:         . . . [G]iven the [Petitioner's] testimony, I now intent to give [CALCRIM No.] 361.  [¶]  You may want to take a look at that. . . .
>
> "[DEFENSE COUNSEL]:     No, that's appropriate."

*Id*. at 17-18.

After the jury instruction conference, the trial court read the jury instructions,

including CALCRIM 330 and 361 to the jury.  *Id*. at 18.

## C. <u>The Court Did Not Err in Instructing the Jury</u>

### 1. <u>The Instruction: CALCRIM No. 361</u>

Petitioner argues that CALCRIM No. 361 was inapplicable to this case and giving the

instruction caused prejudicial error.  (Doc. 1 at 63.)  CALCRIM No. 361 reads:

> If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence.  Any such failure is not enough by itself to prove guilt.  The People must still prove each element of the crime beyond a reasonable doubt.  If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

22

Petitioner contends the trial court failed to make a record establishing the basis for giving the instruction, as the CALCRIM No. 361 Bench Notes recommend;[11] and further, the record identifies no basis for giving the instruction.

### a. **State Court of Appeal Opinion**

The Court of Appeal found that the trial court did not err, and Petitioner was not prejudiced by CALCRIM No. 361. *Tamez*, (No. F068488), at 20. A jury may be instructed as to CALCRIM No. 361, "if a defendant fails to explain or deny evidence against him which he can reasonably be expected to explain or deny." *Id*.

Here,

> [Petitioner] unmistakably denied owning pornographic videos and molesting, babysitting, or otherwise being left alone with Steven and Devan. "A contradiction between the [Petitioner's] testimony and other witnesses' testimony does not constitute a failure to deny which justifies giving the instruction." (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1469.) However, Devan testified [Petitioner] would put lubricant, that came from a packet, on his penis, and [Officer] Klassen located a lubricant gel packet call "Enzyte Topical Rust" in [Petitioner's] residence. [Petitioner] never explained the presence of the packet, a piece of evidence that corroborated Devan's testimony. [FN16] Accordingly, [the Court of Appeal found] there was a fact in the People's case which [Petitioner] failed to explain that was within his particular knowledge to explain.

>> FN16: [Petitioner] was not asked about Devan's testimony regarding the lubricant nor about the lubricant packet located in this residence. That does not, however, negate conclusion that he failed to explain incriminating evidence. (*People v. Redmond* (1981) 29 Cal.3d 904, 911 [as for defense counsel not questioning the [Petitioner] on the subject, the scope of direct examination is a tactical trial choice; as for the People not questioning [Petitioner] on the subject, the controlling consideration is whether the issue

---

[11] The CALCRIM No. 361 Bench Notes state:

> This instruction should only be given when the defendant testifies and the privilege against self-incrimination has not been successfully invoked. . . .

> Before an instruction on this principle may be given, the trial court **must** ascertain as a matter of law: (1) if a question was asked that called for an explanation or denial of incriminating evidence; (2) if the defendant knew the facts necessary to answer the question or if some circumstance precluded the defendant from knowing such facts; and (3) if the defendant failed to deny or explain the incriminating evidence when answering the question.

(emphasis in original) (internal citations omitted).

was within the scope of the [Petitioner's] direct examination and whether the evidence supported the instruction, now whether the prosecution asked [Petitioner] to explain the evidence].)

That does not necessarily mean the jury found a failure to explain, nor considered it in their deliberations. In their arguments to the jury, neither counsel mentioned CALCRIM No. 361 nor argued a failure by [Petitioner] to explain a fact of evidence. Additionally, the CALCRIM No. 361 instruction did not tell the jury there was a failure to explain a fact of evidence. It merely told them they *may* consider a defendant's failure to explain or deny evidence in evaluating the evidence *if* such a failure occurred. Furthermore, the court instructed the jury with CLACRIM No. 200 (Duties of Judge and Jury). They were told, in pertinent part:

> "You must decide what the facts are. It is up to you and all of you alone to decide what happened based only on the evidence that's been presented to you in this trial. [¶] . . . [¶] Pay careful attention to all of these instructions and consider them together. . . . [¶] . . . [¶] Some of these instructions may not apply depending on your findings of the facts. After you have decided what the facts are, follow the instructions that apply to the facts as you find them to be. [FN17]

> > FN17  If instructing a jury with CALCRIM No. 361 were improper, instructing a jury to "'disregard any instruction which applies to a state of facts which you determine does not exist,'" may be considered in assessing the prejudicial effect of so doing. (*People v. Saddler*, *supra*, 24 Cal.3d at p. 684.

> "We must . . . assume that the jurors are intelligent persons capable of understanding and correlating all jury instructions which are given." (*People v. Henley* (1969) 269 Cal.App.2d 263.271.)

*Tamez*, (No. F068488), at 20-21.

The Court of Appeal also found that even if the instruction should not have been given, Petitioner was not prejudiced by the instruction. The Court looked at the totality of evidence and determined, "[t]he evidence was strong and resulted in a jury that reached its verdict in less than an hour." *Id*. at 22.

### b.  The State Court Did Not Err in Instructing the Jury

Petitioner states that at trial, Petitioner denied Steven and Devan's accusations and explained matters within his knowledge; therefore, there was no basis for the trial court to instruct the jury on CALCRIM No. 361. (Doc. 1 at 68-69.) Petitioner contends that the instruction "tainted

the trial[,]" because Petitioner's "conviction rested upon the jurors' determination of the relative credibility of defense and prosecution witnesses." *Id*. at 70.

For the Court to grant habeas relief based upon an error in a jury instruction, there must be a "reasonable likelihood" the jury applied the instruction in a way that violated the Constitution. *Solis*, 219 F.3d at 927 (quoting *Estelle*, 502 U.S. at 72). The instruction may not be construed in isolation, but rather, in the context of all the other jury instructions and the trial record as a whole. *Estelle*, 502 U.S. at 72.

CALCRIM No. 361 instructed the jury that, "*[i]f the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence.*" (emphasis added). As the Court of Appeal noted, the instruction did not tell the jury there was a failure to explain a fact of evidence. Indeed, it simply told them that they *may consider* a failure to explain, *if* Petitioner failed to explain evidence. There is no "reasonable likelihood" that the jury applied this instruction in a way that violated the Constitution. *Solis*, 219 F.3d at 927 (quoting *Estelle*, 502 U.S. at 72).

Even if the Court should not have given the jury instruction, Petitioner has not shown that giving the instruction resulted in the trial being fundamentally unfair. *Estelle*, 502 U.S. at 72-73; *Duckett*, 67 F.3d at 746. Therefore, the Court recommends denying Petitioner's claim.

## 2. **The Instruction: CALCRIM No. 330**

The Court gave the jury CALCRIM No. 330 because the jury heard the CART interview, which occurred when Devan was less than 10 years old. Petitioner claims the Court should not have issued CALCRIM No. 330, because CALCRIM No. 330 only applies to testifying witnesses under the age of 10 and Devan was 15 years old when he testified. (Doc. 1 at 72.)

25

As read to the jury, CALCRIM No. 330 stated:

> You have heard testimony (via Evidence Code 1360: The "CART" Interview of Devan [ ]) from a child who is age 10 or younger. As with any other witness, you must decide whether the child gave truthful and accurate testimony.
>
> In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development.
>
> When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate.
>
> While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child.

(Lodged Doc. Reporter's Transcript at 636.)

### a. <u>State Court of Appeal Opinion</u>

The Court of Appeal concluded that the trial court's instruction as to CALCRIM No. 330 did not constitute an instructional error:

> "In charging the jury the court . . . may make such comment on the evidence and the testimony and credibility of any witnesses as in its opinion is necessary for the proper determination of the case. . . ." ([Cal. Penal Code] §1127; accord, Cal. Const., art. VI, § 10.) Hence, a court may give a cautionary instruction "'relating to certain kinds of evidence and witnesses . . . where necessary to protect . . . against mistake or unwise action by the jury.' [ ]." (*People v. Sutton* (1964) 231 Cal.App.2d 511, 515.) In the instant case, the jury watched a video recording of Devan's December 11, 2008, interview, which was conducted when he was 10 years old. In a clear attempt to guard against any mistake or unwise action by the jurors as to the credibility of Devan's remarks, the court gave a cautionary instruction "reject[ing] traditional notions of child[ren] . . . as susceptible to leading questions, incapable of recalling prior events accurately, and neither reliable no truthful." (*People v. McCoy* (2005) 133 Cal.App.4th 974, 978-979.) That this instruction turned out to be a variant of CALCRIM No. 330 – which normally "assists the jury in evaluating a child witness's performance on the witness stand" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 814-815) – did not make the instruction erroneous. "Trial courts . . . are not bound by the suggested language of the standard [jury] instruction and are free to adapt it to fit the circumstances of the case. . . ." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.)

*Tamez*, (No. F068488), at 19-20.

26

**b.  The State Court Did Not Err in Instructing the Jury**

Petitioner asserts that it was inappropriate to instruct the jury as to CALCRIM No. 330, because CALCRIM No. 330 is only applicable when a witness under 10 years old testifies at trial. (Doc. 1 at 77.)

Based on its analysis of state law, the Court of Appeal determined that the trial court did not err in giving CALCRIM No. 330.  This Court will not reexamine the accuracy of the state court's analysis of state law.  *Estelle*, 502 U.S. at 67-68; *Langford*, 110 F.3d at 1389.

Even if the Court were to assume Petitioner's claim is cognizable on federal habeas review and that the trial court erred in giving CLACRIM No. 330, Petitioner cannot meet his burden of showing the error caused a "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 637 (1993) (quoting *Kotteakos*, 328 U.S. at 776).  Petitioner cuts and pastes his same argument from CALCRIM No. 361 and again argues CALCRIM No. 330 "tainted the trial[,]" because Petitioner's "conviction rested upon the jurors' determination of the relative credibility of defense and prosecution witnesses." *Id*. at 78.

Petitioner does not explain how instructing the jury that they "should not discount or distrust the testimony of a witness just because" Devan was younger than 10 years old at the time of the CART interview had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 637 (1993) (quoting *Kotteakos*, 328 U.S. at 776).  The jury was not instructed to consider Devan's testimony as more credible than Petitioner's; rather, the jury was told not to discount the testimony of Devan simply because he was a child.  There is no "reasonable likelihood" that the jury applied the instruction in a way that violated the Constitution. *Solis*, 219 F.3d at 927 (quoting *Estelle*, 502 U.S. at 72).

Based on the foregoing, the Court recommends finding that the Court of Appeal's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Consequently, federal habeas relief is not warranted on this claim.

**VI.** **Petitioner's Claim of a Sentencing Error Does Not Present a Basis for Federal Habeas Relief**

For his fourth ground for habeas relief, Petitioner contends that his sentence of 75 years to life is unauthorized under California law and is a violation of his Due Process Rights. (Doc. 1 at 81.) Petitioner alleges that he was improperly sentenced pursuant to the One Strike[12] and Habitual Sexual Offender[13] sentencing schemes. *Id.* Respondent counters that federal habeas review is not proper for errors in the application of state law. (Doc. 14 at 24-25).

### A. State Court of Appeal Opinion

The Court held the 75-years-to-life minimum term of each indeterminate sentence was authorized. *Tamez*, (No. F068488), at 22. Petitioner argues that his sentenced was not authorized because at sentencing, the trial court did not state that it found true the prior convictions qualified for the Habitual Sexual Offender provision of California law. *Id.* at 25.

The Court of Appeal disagreed with Petitioner's contention, because:

> [a]t the bifurcated proceeding, the court initially pronounced that "the special allegations set forth and the priors set forth in the information" were true beyond a reasonable doubt. It then specified some of these allegations, but did not expressly mention section 667.71. Later, at sentencing, the court imposed – as "the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious and/or violent felony convictions" ([Cal. Penal Code] § 1170.12, subd. (c)(2)(A)(i)) – 25 years to life pursuant to section 667.71, inter alia. In doing so, "the court impliedly – but sufficiently – rendered a finding of true as to

---

[12] California Penal Code § 667.61 states, "any person who is convicted of an offense specified in [the section] . . . shall be punished by imprisonment in the state prison for 25 years to life."

[13] California Penal Code § 667.71 states:

> (a) For the purpose of this section, a habitual sexual offender is a person who has been previously convicted of one or more of the offenses specified in [the section] and who is convicted in the present proceeding of one of those offenses.
>
> (b) A habitual sexual offender shall be punished by imprisonment in the state prison for 25 years to life.

28

the [section 667.71] allegation. . . ." (*People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17; accord, *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051.) Hence, under the circumstances of this case, the 75-years-to-life minimum term was lawfully imposed.

*Id.* at 25-26.

## B. <u>Claims of Sentencing Errors Are Not Cognizable on Federal Habeas Review</u>

Typically, challenges to a state court's application of state sentencing laws do not create a federal question cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 f.3d 461, 469 (9th Cir. 1989). Petitioner must show that the claimed sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (internal citation and quotation marks omitted).

Here, Petitioner claims he did not qualify for the One Strike or Habitual Sexual Offender sentencing scheme, because they cannot be applied "without a verdict or admission." (Doc. 1 at 84.) Both the One Strike and Habitual Sexual Offender sentencing schemes "apply only if the existence of any circumstance specified in [the section] is alleged in the accusatory pleading . . ., and is either admitted by the defendant in open court or found to be true by the trier of fact." (Cal. Penal Code §§ 667.61(o); 667.71(f) ("This section shall apply only if the defendant's status as a habitual sexual offender is alleged in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the trier of fact.")). Petitioner maintains the Court did not state that it "found true that the prior convictions qualified for One Strike or Habitual Sexual Offender 25-years-to-life sentencing provisions." (Doc. 1 at 85.)

Although in his reply to Respondent, Petitioner claims his argument is not solely an error of state law, Petitioner's contention that his sentence does not comply with California sentencing laws clearly sets forth only a claim of state law error. In arguing that the sentence violates

Petitioner's Substantive Due Process Rights, Petitioner cites to cases that explain substantive due process. However, simply claiming a substantive due process violation does not state a claim that is cognizable on federal habeas review.

Petitioner also states, "[i]t is established that silence upon one or more of multiple counts or allegations during the rendering of a verdict constitutes implied acquittal on the counts or allegations on which the trier of fact is silent." (Doc. 1 at 88.) Petitioner argues that "[t]he Court's silence on the One Strike and Habitual Sexual Offender allegations therefore constituted implied acquittal on those allegations." *Id.* Petitioner's claim is unavailing.

As the Court of Appeal noted, at sentencing, the trial court imposed "the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious and/or violent felony convictions." *Tamez*, (No. F068488), at 25. The Court of Appeal found this to "sufficiently [ ] render[ ] a finding of true as to the [section 667.71] allegation." *Id.* at 25-26 (internal citations and quotation marks omitted). In other words, the Court of Appeal held that the trial court stated it found true the One Strike and Habitual Sexual Offender allegations. This Court will not reexamine the accuracy of the state court's analysis of state law. *Estelle*, 502 U.S. at 67-68; *Langford*, 110 F.3d at 1389.

Finally, Petitioner claims his counsel was ineffective for failing to object to the sentence. Because the Court of Appeal found the sentence was proper pursuant to California law, there was no basis for Petitioner's attorney to object under California law. Therefore, the attorney's performance was not outside the range of professionally competent assistance. *See Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance of counsel.") (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").

Even if the Court found Petitioner alleged a cognizable claim, his sentencing error claim would fail. This Court must defer to the state courts' interpretation and application of California law concerning the propriety of Petitioner's sentence under California law. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Court reiterates that it will not reexamine the accuracy of the state court's analysis of state law. *Estelle*, 502 U.S. at 67-68 *Langford*, 110 F.3d at 1389. For the forgoing reasons, the Court recommends denying Petitioner's claim of sentencing errors.

**VII.**   **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

> (B)  the final order in a proceeding under section 2255.

> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

31

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court recommends declining to issue a certificate of appealability.

## VIII.  Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the Court deny the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923

32

F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **July 3, 2018**                          /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE